# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE,<br><br>*Plaintiffs*,<br><br>v.<br><br>JULIE MOORE, in her official capacity as the Secretary of the Vermont Agency of Natural Resources and JANE LAZORCHAK, in her official capacity as the Director of the Vermont Agency of Natural Resources Climate Action Office,<br><br>*Defendants*. | Civil Action No. 2:24-cv-01513-MKL |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE**

## Table of Authorities

Page(s)

**Cases**

*Brenner v. Scott*,
　298 F.R.D. 689 (N.D. Fla. 2014) ...........................................................................................6

*Coal. to Def. Affirmative Action v. Granholm*,
　501 F.3d 775 (6th Cir. 2007) .................................................................................................5

*Comcast v. Vermont Public Utility Commission*,
　No. 5:17-cv-161, 2018 WL 11469513 (D. Vt. Feb. 8, 2018) .................................................9

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)...................................................................................................11

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
　No. 1:11-cv-99-jgm, 2011 WL 2173785 (D. Vt. June 2, 2011) ..................................*passim*

*Floyd v. City of New York*,
　770 F.3d 1051 (2d Cir. 2014)............................................................................................3, 4

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
　508 F. Supp. 2d 295 (D. Vt. 2007)...................................................................................9, 10

*Grocery Mfrs. Ass'n v. Sorrell*,
　No. 5:14-CV-117, 2014 WL 12644264 (D. Vt. Oct. 7, 2014)...................................5, 8, 9, 12

*League of Women Voters Minn. v. Ritchie*,
　819 N.W.2d 636 (Minn. 2012)..............................................................................................6

*League of Women Voters of Va. v. Va. State Bd. of Elections*,
　458 F. Supp. 3d 460 (W.D. Va. 2020) ...................................................................................7

*Northland Fam. Plan. Clinic, Ind. v. Cox*,
　487 F.3d 323 (6th Cir. 2007) .................................................................................................5

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
　467 F.3d 238 (2d Cir. 2006)...................................................................................................3

*S.E.C. v. Bear, Stearns & Co. Inc.*,
　No. 03 CIV.2937 WHP, 2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) ............................7, 8

*Vermont Alliance for Ethical Healthcare, Inc. v. Hoser*,
　No. 5:16-cv-205, 2016 WL 7015717 (D. Vt. Dec. 1, 2016)..................................................10

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)......................................................................................................4

**Statutes**

10 V.S.A. §§ 598(b), 599c ...........................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 24 .........................................................................................................3, 9, 10, 12

**Table of Contents**

Introduction ............................................................................................................................... 1

Background ............................................................................................................................... 1

Argument .................................................................................................................................... 2

    I.   The Vermont Attorney General's Office Will Adequately Defend the Case. ................... 3

        A.  Adequacy of Representation Is a Required Consideration for Permissive Intervention. ................................................................................................................ 3

        B.  The State and Movants Share the Same Interest in the Act's Enforcement. ............... 4

        C.  The State Has Shown a Clear Intent and Capacity to Defend the Act. ......................... 7

    II.  Permitting Movants to Intervene Would Prejudice Plaintiffs and Delay Resolution of Their Claims. ................................................................................................................... 10

    III. Movants Could Raise Their Arguments as Amici Curiae. .............................................. 12

Conclusion ............................................................................................................................... 12

**Introduction**

The United States Chamber of Commerce (the "Chamber") and the American Petroleum Institute ("API") (collectively, "Plaintiffs") respectfully submit this response in opposition to the motion to intervene filed by Northeast Organic Farming Association of Vermont and Conservation Law Foundation (collectively, "Movants").

Movants seek to intervene in this case, but they have failed to show any direct, substantial, and legally protectable interest that would justify intervention. Instead, permitting Movants to intervene would serve only to delay the case by injecting unnecessary facts and duplicative arguments, burdening both the parties and the Court. The Court should deny their motion to intervene and grant them leave to participate as amici curiae.

**Background**

Vermont has enacted an unprecedented law that makes out-of-state companies strictly liable for their alleged contributions to global greenhouse gas emissions. Compl. ¶¶ 1, 48, ECF 1. The Climate "Superfund" Act, S.259, does not limit itself to emissions released within Vermont's borders. *Id.* ¶ 50. Instead, it seeks to penalize a select group of energy producers for greenhouse gases emitted worldwide over the past thirty years. *Id.* ¶¶ 45, 50. None of the companies is based in Vermont. *Id.* ¶¶ 1, 151. Yet the law aims to extract substantial payments from them, shifting costs onto other states while using the money to fund Vermont's future climate initiatives. *Id.* ¶¶ 1, 9.

Plaintiffs sued on December 30, 2024, to enjoin enforcement of this plainly unconstitutional law and to protect the constitutional rights of their members. *See id.* ¶ 2 (citing *City of New York v. Chevron Corp.*, 993 F.3d 81, 91-99 (2d Cir. 2021) (holding that neither our federal constitutional structure nor the Clean Air Act authorizes a State to impose liability for harms arising from out-of-state and global greenhouse gas emissions)). Plaintiffs' complaint alleges that the Act

1

is precluded by the United States Constitution (Count I), is preempted by the Clean Air Act (Count II), and violates several specific federal constitutional provisions (Counts III-VI). *Id.* ¶¶ 72-186.

In March 2025, counsel for Plaintiffs and Defendants conferred about their respective positions, the motions they intended to file, and briefing schedules. After negotiating, the parties reached an agreement on a briefing schedule and filed a stipulated motion for a briefing schedule that would accommodate Defendants' motion to dismiss and Plaintiffs' partial motion for summary judgment. Stipulated Mot. to Set Br. Schedule, ECF 17. On March 20, 2025, the Court entered an amended scheduling order setting briefing deadlines for this case consistent with the parties' stipulation. Amend. Scheduling Order, ECF 18. Defendants' responsive pleading or motion to dismiss is due by May 19, 2025; Plaintiffs' opposition and any motion for partial summary judgment on Counts I and II is due by June 18, 2025; Defendants' reply in support of their motion to dismiss is due by August 15, 2025; and Plaintiffs' reply in support of any motion for summary judgment is due by September 5, 2025. *Id.*

Now Movants seek permissive intervention. Mot. to Intervene, ECF 19; *see also* Mem. in Support of Mot. to Intervene 13, ECF 19-1 ("Mem.").

**Argument**

Movants' intervention is unnecessary and would burden the parties and the Court and delay adjudication of the claims. There is no daylight between Movants' interest in this litigation and the State of Vermont's interest. Defendants fully represent the Movants' interest and all other third parties who wish to see the Act enforced. The addition of parties to this suit with interests indistinguishable from the present parties will only increase costs for the parties and Court and delay resolution of the case.

Movants concede that they are not entitled to intervene as of right but instead ask the Court to exercise its discretion to grant permissive intervention. When considering whether to allow

2

permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court must also weigh whether the movants "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).

The Court should deny Movant's request for permissive intervention for three reasons. First, Defendants adequately represent the State's interest in defense of the Act. Second, intervention would only cause undue delay and prejudice to these proceedings. Third, the Movants can readily articulate their views and protect their interest as amici curiae.

I.  **The Vermont Attorney General's Office Will Adequately Defend the Case.**

Intervention is unwarranted here where the Vermont Attorney General's Office adequately represents Movants' interest in defending the Act. Adequacy of representation is an important factor in permissive intervention. *See Floyd*, 770 F.3d at 1057. This factor weighs decisively against intervention here because the State's interests are fully aligned with Movants' interest and the State has the resources and intent to adequately defend the Act in this litigation.

A.  **Adequacy of Representation Is a Required Consideration for Permissive Intervention.**

Contrary to Movants' assertion, *see* Mem. 13, the Second Circuit treats the adequacy of representation by existing parties as an important factor in deciding a motion for permissive intervention. "The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *"R" Best Produce*, 467 F.3d at 240. "To be granted intervention as of right *or by permission*, 'an applicant

3

must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) *show that the interest is not protected adequately by the parties to the action*.'" *Floyd*, 770 F.3d at 1057 (emphases added) (citation omitted). The Second Circuit has emphasized that a "failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd*, 770 F.3d at 1057 (cleaned up).

        **B.**        **The State and Movants Share the Same Interest in the Act's Enforcement.**

Here, the State adequately represents Movants' interest. "Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990). This Court has held that "in a challenge to the constitutionality of an already enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted for the most part to the government, and the public's legal interest in the legislative process becomes less relevant." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, No. 1:11-cv-99-jgm, 2011 WL 2173785, at *2 (D. Vt. June 2, 2011) (citation omitted). That is the case here—at bottom, Movants' sole interest in the outcome of this litigation is the enforcement of the Act. *See, e.g.*, Mem. 7, 9 (explaining that Movants' members "stand to benefit" from the enforcement of the Act and that the Act was intended to limit the harms Movants' members assert that they have faced). But as this Court has held in a similar context, that interest is "identical to that of Vermonters" and thus cannot be grounds for intervention. *Entergy*, 2011 WL 2173785, at *3. This case concerns legal issues alone—whether the Act is preempted by federal law and whether it is unconstitutional. Movants have nothing to contribute to these issues that the State cannot present. *See id.* at *5 (denying permissive intervention where movants had "not explained how their defense of Vermont's scheme would avoid duplicating the arguments and evidence presented by existing Defendants").

Movants argue they should be permitted to intervene because they were "'intimately involved' in advocating for the law," Mem. 11, but that argument misses the mark. Now that the law has been enacted, their interest lies in its enforcement, not its adoption. This Court has repeatedly denied intervention by similarly situated organizations because, once a law has been passed, the State adequately represents their interest in the law's enforcement. *Entergy*, 2011 WL 2173785, at *3 ("Movants essentially argue that the effort and resources they expended in the proceedings will be nullified if Plaintiffs prevail in this action. This is essentially an interest in the ultimate enforcement of Vermont's statutory and regulatory scheme."); *Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14-CV-117, 2014 WL 12644264, at *5 (D. Vt. Oct. 7, 2014) (denying permissive intervention where the organization attempting to intervene to defend a law had "advocat[ed] for its passage" and "continued [to] support" the law). Indeed, this Court in another case has denied intervention by one of the Movants here based on similar arguments. *See Entergy*, 2011 WL 2173785, at *1 (denying intervention to Conservation Law Foundation where it failed to make any showing that their interests would not be adequately represented by Vermont or were distinct in any way from the interest in enforcement shared by all Vermonters).

In reality, Movants are attempting to present legislative policy arguments supporting the passage of the law under the guise of an interest in the litigation. Courts across the country have held that advocacy groups aligned with States' litigation positions cannot intervene in States' support on these grounds. *See, e.g.*, *Northland Fam. Plan. Clinic, Ind. v. Cox*, 487 F.3d 323, 343-47 (6th Cir. 2007) (denying pro-life groups' motion to intervene in a suit challenging a Michigan law that regulated abortion, where the State adequately represented those interests); *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780-83 (6th Cir. 2007) (holding that groups that lobbied for ballot initiative lacked substantial legal interest in challenge to law despite court's

expansive view of interest sufficient to support intervention, where the State adequately represented groups' interests); *Brenner v. Scott*, 298 F.R.D. 689, 690-92 (N.D. Fla. 2014) (denying organization's motion to intervene in actions challenging Florida's constitutional and statutory provisions banning same-sex marriage, where the State adequately represented organization's interests); *League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 640, 642-43 (Minn. 2012) (per curiam) (nonprofit organization that expended resources to get proposed constitutional amendment passed in legislature denied intervention in suit alleging error in preparation of ballot for general election, where the State adequately represented organization's interests). Thus, Plaintiffs cannot justify intervention by arguing that the effort and resources they expended in advocating for the law will be nullified if Plaintiffs prevail here, because the State Defendants fully represent their interest.

Movants' other purported interests are speculative. They claim damages from climate change, which they attribute to energy producers. Mem. 7-10. Even assuming that the specific weather-related events from which Movants' members suffered damages were the result of climate change, Movants still fail to show a sufficient interest in defending the law that the State Defendants do not fully represent. Contrary to Movant's argument, they and their members are in no way "protected by the Act." Mem. 6 (cleaned up). The Act imposes penalties on covered energy products and requires those payments to be paid to Vermont. Compl. ¶¶ 1, 9, 45; *see* S.259 § 598(a)(1). Movants and their members have no way of knowing what projects Vermont might fund with penalties imposed by the Act, where those projects will be, or whether those projects will redress the harms they describe. The only parties who would receive penalty payments under the Act are already Defendants in this suit.

6

Last, Movants speculatively argue that their members, such as small farms or individuals, have an interest in this litigation because they could receive payouts or direct funding from the fund established by the Act. *See* Mem. 7-10; *see id.* at Ex. C at 5, Ex. D at 5; Ex. F at 4. But they provide no authority under the Act or otherwise to establish that they would receive funds from Vermont based upon penalties that energy producers pay under the Act. Although the Act contemplates computing cost recovery demand amounts based, in part, on the climate damages to Vermont residents, 10 V.S.A. §§ 598(b), 599c, there is no statutory authority to dispense funds directly to residents. Any such argument is pure conjecture: neither Movants nor anyone else knows what projects Vermont may fund or who may receive funding, as Movants' motion seems to recognize. *See* Mem. 3 ("[s]uch projects may include"); *id.* at 10 ("Funds from the Act could be used for a wide range of . . . projects."); *id.* ("eligible projects under the Act might include"). If an interest in *potentially* obtaining funds for *hypothetical* projects, or an even more attenuated interest in benefiting generally from hypothetical projects was sufficient to justify intervention, then essentially any Vermont resident could intervene in this dispute. Such an interest is far too speculative (and indistinct) to justify intervention. *See, e.g.*, *League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 467 (W.D. Va. 2020) (denying permissive intervention where any Virginian who has voted would have had a similar interest and adding intervenors could "open the floodgates" to intervention); *S.E.C. v. Bear, Stearns & Co. Inc.*, No. 03 CIV.2937 WHP, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003) (denying permissive intervention because many other similarly situated parties could make the same arguments and also intervene, creating delay and costing the court resources).

### C. The State Has Shown a Clear Intent and Capacity to Defend the Act.

The Vermont Attorney General's Office is more than capable of defending this law and adequately representing Movants' interest. It has already engaged with Plaintiffs, reached a

7

briefing schedule, and expressed its intent to move to dismiss and oppose Plaintiffs' motion for partial summary judgment. Stipulated Mot. to Set Br. Schedule, ECF 17. Further, the Act appropriated money specifically for "costs association with . . . legal support in carrying out the requirements of [the] [A]ct." S.259 § 4(a); *see Grocery Mfrs. Ass'n*, 2014 WL 12644264, at *6 (concluding that Vermont could adequately defend law where the law "itself contains a funding mechanism"); *Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *4 ("When one of the existing parties [in the underlying action] is the government and that party is aggressively representing the interests of the proposed intervenor, courts exhibit unwillingness to grant permissive intervention." (quoting 6 *Moore's Federal Practice* § 24.10[2][c], at 24-60 (Matthew Bender 3d ed. 2000)).

### D. Movants' Arguments Fail to Show Any Deficiency in Representation.

Movants do not dispute any of this. They offer no new legal arguments or positions beyond those the State has already advanced.[1] And their motion to intervene rests solely on the argument that they will be able to present other facts. *See* Mem. 12 ("Movants' participation will aid the full development of facts."). But the Plaintiffs and Defendants do not anticipate any discovery to resolve the purely legal issues raised in Counts I and II of Plaintiffs' Complaint, and they have deferred any consideration of discovery until after this Court has ruled on the parties' dispositive motions. Movants fail to identify any deficiency in the State's representation or meet even a minimal showing that representation is inadequate, let alone the heightened showing necessary where the State is party to the suit. *See Grocery Mfrs. Ass'n*, 2014 WL 12644264, at *5 (explaining that movants must provide at least a minimal showing that their interests are not already adequately

---

[1] Movants' state that they also "intend to argue that for jurisdictional and/or prudential reasons, this Court should not adjudicate Plaintiffs' claims." Mem. 14. There is no reason to think Defendants would not, if these arguments are colorable, raise them in the Attorney General's forthcoming motion to dismiss.

represented for permissive intervention and that where the State is a party that burden is heightened because the showing must be "particularly strong").

Instead, Movants' argument on this issue is that they need not show that the States' representation is inadequate because they are not moving for intervention as of right. Mem. 13. But as explained above, under governing Second Circuit precedent, Movants seeking permissive intervention *must* satisfy this factor as well, and courts, including this Court, deny permissive intervention where the movants' interest is adequately represented. In *Entergy*, this Court denied Conservation Law Foundation's request for permissive intervention because its "interests [were] adequately represented by Vermont." 2011 WL 2173785, at *5. And in *Grocery Manufacturers Association*, this Court also denied a request for permissive intervention to defend a law, holding that "[b]ecause the State of Vermont is 'ready, willing and able to vigorously defend the validity of [Act 120] so that the [Organizations'] interests are adequately represented,' the Organizations have not demonstrated that are entitled to intervene pursuant to Rule 24(b)." 2014 WL 12644264, at *7 n.2. So too here.

Moreover, the cases Movants cite are distinguishable. For example, in *Comcast v. Vermont Public Utility Commission*, No. 5:17-cv-161, 2018 WL 11469513, at *2-4, *8 (D. Vt. Feb. 8, 2018), the Court, citing *Floyd*, allowed intervention to a trade association whose members would be directly affected by a challenged regulatory proceeding—a "particular interest"—and where the association had significant experience with relevant technical issues and had participated in the underlying proceeding. The indirect and speculative interest that intervenors share with all Vermont citizens could not be more different. In *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295 (D. Vt. 2007), the court granted intervention as of right because the movants "made a sufficiently strong showing that the State may not adequately represent their

9

interests." *See* Order on Motion to Intervene at 13, *Green Mountain Chrysler*, 508 F. Supp 2d 295, No. 2:05-CV-302 (D. Vt. May 3, 2006), ECF 46. Moreover, the motion to intervene in that case was only "conditional[ly]" opposed. *See* Conditional Opposition to Motion to Intervene at 1, *Green Mountain Chrysler*, No. 2:05–CV–302 (D. Vt. Feb. 21, 2006), ECF 35; *see also* Order on Motion to Intervene, *supra*, at 8. Here, Movants do not attempt to intervene as of right, and Plaintiffs unconditionally oppose Movants' intervention. In *Vermont Alliance for Ethical Healthcare, Inc. v. Hoser*, No. 5:16-cv-205, 2016 WL 7015717, at *2 (D. Vt. Dec. 1, 2016), the movants again sought intervention as of right. *See* Motion to Intervene at 2, *Vt. All. for Ethical Healthcare*, No. 5:16-cv-205 (D. Vt. Nov. 7, 2016), ECF 42. The Court rejected intervention as of right but granted permissive intervention only because it could not rule out the possibility of future disagreement between the intervenors and the State regarding enforcement of the Act. *See Vt. All. for Ethical Healthcare*, 2016 WL 7015717, at *2. There is no such risk here, as Defendants have shown every intention of defending the Act in this litigation and enforcing it thereafter. Indeed, Movants have not even argued otherwise.

The weight of precedent confirms that adequacy of representation is a central factor in permissive intervention. Movants cannot avoid this requirement. Because the state adequately represents Movants' interest, Movants lack a sufficient interest to intervene.

## II. Permitting Movants to Intervene Would Prejudice Plaintiffs and Delay Resolution of Their Claims.

Movants' intervention would introduce unnecessary delay into these proceedings, undermining the very purpose of the agreed-upon schedule. Indeed, Movants acknowledge that this factor is a "principal guide" in a court's decision on permissive intervention, Mem. 5 (citation omitted), and here, it counsels strongly in favor of denying intervention. *See* Fed. R. Civ. P. 24(b)(3) (intervention should not be permitted where it would "unduly delay or prejudice the adjudication

of the original parties' rights"); *Entergy*, 2011 WL 2173785, at *1 (denying permissive intervention "because the Movants' participation as parties would unduly delay adjudication of this matter").

Speed and efficiency are paramount in this case because Plaintiffs' members' constitutional rights are at stake. To that end, the parties reached an agreed-upon briefing schedule that allows Plaintiffs to swiftly advance Counts I and II of their complaint to the merits and permits simultaneous briefing on Defendants' motion to dismiss. *See* Stipulated Mot. to Set Br. Schedule, ECF 17; Amed. Scheduling Order, ECF 18. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (intervention would delay proceedings and prejudice parties who had been in negotiations for several months).

Allowing Movants to intervene now would throw a wrench into this schedule and later proceedings by slowing down and unnecessarily complicating the case. For example, Movants claim that they will not "introduce undue delay or prejudice to the existing parties," but in the same motion, they request leave to file a motion to dismiss 14 days after the State files its motion to dismiss. Mem. 6. That will not be the only delay. Movants would introduce another motion into an already full briefing schedule, which would require additional briefing and new, delayed deadlines. Indeed, Movants' have already burdened the Court with hundreds of additional pages of "facts" attached with their motion to intervene. Those purported "facts" do not support intervention; rather, they support only policy arguments and demonstrate how permitting Movants to intervene will only lengthen the record and distract from the issues properly before the Court. Such unnecessary difficulties for the parties and the Court would continue as the case proceeds—with no benefit to either, as Defendants' briefing will fully represent Movants' proffered interest, *see supra* Sec. I. In sum, permitting intervention would create precisely the kind of inefficiency and

disruption that Rule 24 seeks to prevent. *See Entergy*, 2011 WL 2173785, at *5 (denying Conservation Law Foundation permission intervention because "given the Court's recent order setting an expedited schedule for the case, affording Movants status as full parties, with the right to conduct discovery, present oral argument, and question witnesses, would unduly delay resolution of the case").

### III.    Movants Could Raise Their Arguments as Amici Curiae.

Permissive intervention is not only burdensome, but also unnecessary here. Movants can present their views as amici curiae without disrupting the schedule in this case. Courts regularly deny permissive intervention when amicus participation suffices, especially when intervention would cause undue delay or serve no unique purpose. *See, e.g.*, *id.* at *1 (denying Conservation Law Foundation and another movants' motion for permissive intervention because Vermont adequately represented their interests, the court had already entered an expedited schedule, and the movants could file an amicus brief instead); *Grocery Mfrs. Ass'n*, 2014 WL 12644264, at *7 (similar). Plaintiffs respectfully request that the Court consider this alternative, as it preserves judicial efficiency, allows Movants to fully express their positions on the relevant legal issues, and avoids prejudicing Plaintiffs.

### Conclusion

For these reasons, the Court should deny Movants' motion to intervene, and, instead, allow Movants to participate in this litigation, as amici curiae.

Dated: April 14, 2025

Steven P. Lehotsky*
Scott A. Keller*
Michael B. Schon*
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW,
  Suite 700

Respectfully submitted,

*/s/ Matthew B. Byrne*

Matthew B. Byrne
GRAVEL & SHEA PC
76 St. Paul Street, 7th Floor
Burlington, VT 05402-0369
Telephone: (802) 658-0220
Fax: (802) 658-1456

12

Washington, DC 20001
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: steve@lkcfirm.com
Email: scott@lkcfirm.com
Email: mike@lkcfirm.com

Matthew H. Frederick*
LEHOTSKY KELLER COHN LLP
408 W. 11th Street, 5th Floor
Austin, TX 78701
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: matt@lkcfirm.com

Jared B. Magnuson*
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: jared@lkcfirm.com

Meredith R. Criner*
LEHOTSKY KELLER COHN LLP
8513 Caldbeck Drive
Raleigh, NC 27615
Telephone: (512) 693-8350
Fax: (512) 727-4755
meredith@lkcfirm.com

*Counsel for Plaintiffs the Chamber of Commerce of the United States of America and American Petroleum Institute*

Email: mbyrne@gravelshea.com

Jennifer B. Dickey*
Kevin R. Palmer*
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
Telephone: (202) 463-5337

*Counsel for Plaintiff the Chamber of Commerce of the United States of America*

Ryan Meyers*
American Petroleum Institute
200 Massachusetts Avenue, NW,
  Suite 1200
Washington, DC 20001
Telephone: (202) 682-8000

*Counsel for Plaintiff American Petroleum Institute*

**admitted pro hac vice*

**Certificate of Service**

I, Matthew B. Byrne, certify that on April 14, 2025, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

<u>/s/ Matthew B. Byrne</u>
Matthew B. Byrne
