# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE,<br><br>*Plaintiffs*,<br><br>v.<br><br>JULIE MOORE, in her official capacity as the Secretary of the Vermont Agency of Natural Resources and JANE LAZORCHAK, in her official capacity as the Director of the Vermont Agency of Natural Resources Climate Action Office,<br><br>*Defendants*. | Civil Action No. 2:24-cv-01513<br><br>**DECLARATION OF MARTIN DURBIN** |

1. I, Martin Durbin, declare as follows:

2. I am the Senior Vice President for Policy at the Chamber of Commerce of the United States of America ("the Chamber"). In that capacity, I oversee the entirety of the Chamber's Policy Division.

3. I am also President of the Chamber's Global Energy Institute, and in that capacity, I lead strategic development and implementation of the Chamber's climate, energy, and sustainability policy.

4. My business address is 1615 H Street, N.W. Washington, D.C. 20062-2000.

5. I am over 18 years old. This Declaration is based upon my personal knowledge and/or upon my review of business records of the Chamber. If called to testify, I could and would testify competently about the matters in this declaration.

## THE CHAMBER AND ITS MISSION

6. The Chamber is the world's largest business federation, representing approximately 300,000 direct members. The Chamber represents the interests of its members nationwide, who, in turn, represent more than three million U.S. businesses and professional organizations of every size and in every economic sector, including the energy sector, and geographic region of the country.

7. The Chamber's mission, which it has advanced for more than 100 years, is to advocate for policies designed to help businesses create jobs and grow the national economy.

8. The Chamber furthers this mission through leading pro-business initiatives on legislation and regulation, and to this end, regularly engages in public advocacy regarding issues of vital concern to America's business community.

9. The Chamber also engages in litigation, including constitutional and administrative challenges to laws that affect its members' ability to operate freely and lawfully. That includes

litigation against federal, state, and local governments to challenge government action that harms its members, such as its current challenge to Vermont's Climate "Superfund" Act, S.259 ("Act" or "Vermont's Act").

10. Challenging the legality of the Act is central to the Chamber's mission. The Chamber's mission includes protecting its members from unconstitutional burdens on their business operations. The Chamber has brought suit to challenge Vermont's Act to prevent harms to its members and ensure that its members are not forced to incur unjustified penalties based on a legally impermissible statute.

## VERMONT'S CLIMATE SUPERFUND ACT'S EFFECTS ON THE CHAMBER'S MEMBERS

11. I am aware of Vermont's Act that is the subject of the above-captioned case.

12. The Act imposes strict, retroactive financial liability on select energy producers based on their purported share of global greenhouse gas emissions. It applies to emissions dating back to 1995 and does not distinguish between emissions generated during production or emissions from end use by third parties.

13. The Act applies to "[r]esponsible parties," which it defines as "any entity or a successor in interest to an entity that during any part of the covered period was engaged in the trade or business of extracting fossil fuel or refining crude oil and is determined by the Agency attributable to for more than one billion metric tons of covered greenhouse gas emissions." 10 V.S.A. § 596(22). This definition "does not include any person who lacks sufficient connection with the State to satisfy the nexus requirements of the U.S. Constitution." *Id.*

14. The statute provides no discretion to the enforcing agency. Once Vermont determines that a company meets its emissions threshold, the agency must issue a cost recovery demand. *See id.* §§ 596(22), 598(f). Those demands are not capped. They may include sums

reaching hundreds of millions—or even billions—of dollars, depending on the agency's emissions calculations.

15.     It is clear that Vermont intends to enforce the Act against one or more of Chamber's members. Vermont's own actions and statements, the Act's legislative history, and responses to the States' request for information concerning implementation of the Act make clear that Vermont will issue cost recovery demands to one or more of the following Chamber members: Exxon Mobil Corporation, Shell USA, Inc., Chevron Corporation, and BP America, Inc. All four of these companies are members of the Chamber.

16.     The cost recovery demands will force Chamber members to prepare for and defend against administrative enforcement actions, causing them to incur substantial and unrecoverable compliance costs. These burdens are particularly acute because the Act provides no procedural safeguard or opportunity for meaningful pre-demand adjudication.

17.     The harms facing these Chamber members are not speculative. They are already underway. Preparing for the Act's enforcement requires significant financial and operational commitments. These companies must begin gathering decades of emissions and production data, retain legal and technical consultants, conduct liability modeling, and divert high-level personnel from ongoing business initiatives. They must also begin preparing a defense against enforcement and for any required changes they may need to make to their mandatory government disclosures. These burdens are especially severe because the statute contains no process for early or pre-demand judicial review. Companies must prepare for enforcement without any meaningful opportunity to contest their designation or estimated emissions before a cost recovery demand is issued.

18.     These compliance efforts are costly and nonrefundable. Vermont's sovereign immunity prevents these companies from recovering any money spent on preparing for the statute's enforcement—even if the statute is ultimately struck down. That includes money spent on internal labor, external advisors, data systems, and legal strategy.

19.     Moreover, the Act, if enforced, will cause Chamber members to suffer significant and unrecoverable financial losses. The Act would impose staggering penalties in the hundreds of millions or billions of dollars per entity, forcing Chamber members to incur substantial costs that would negatively impact their business operations and the customers they serve throughout the United States and around the world.

20.     Specifically, if Vermont's Act is not stopped from going into effect, then Chamber members Exxon Mobil Corporation, Shell USA, Inc., Chevron Corporation, and BP America, Inc. (and other Chamber members Vermont intends to send cost recovery demands to) will incur unrecoverable costs. But if the Act is enjoined, those companies and other Chamber members would retain their rights to be free from unconstitutional liability under the Act, would not be forced to spend unrecoverable compliance costs preparing for the Act's enforcement, and would avoid the payment of significant penalties under the Act.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 9, 2025, in Washington, D.C.

By: _____
Martin Durbin

5