**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA and
AMERICAN PETROLEUM INSTITUTE,

*Plaintiffs,*

v.

JULIE MOORE, in her official capacity as
the Secretary of the Vermont Agency of
Natural Resources and JANE LAZORCHAK,
in her official capacity as the Director of the
Vermont Agency of Natural Resources
Climate Action Office,

*Defendants.*

Civil Action No. 2:24-cv-01513

**DECLARATION OF VIJAY SWARUP**

1.    I, Vijay Swarup, declare as follows:

2.    I am the Senior Director, Climate Strategy & Technology, Corporate Strategic
Planning at Exxon Mobil Corporation ("ExxonMobil"), a publicly traded company engaged in
global fossil fuel production, refining, marketing, and research. In that capacity, I oversee
ExxonMobil's strategy to reduce greenhouse gas emissions and addressing and mitigating certain
of the risks of climate change. This includes climate policy and advocacy initiatives, along with
the interplay between policy and the advancement and implementation of technology.
ExxonMobil's business address is 22777 Springwoods Village Parkway, Spring, Texas 77389.

3.    I am offering this declaration in support of the Chamber of Commerce of the United
States ("the Chamber") and the American Petroleum Institute ("API") in the above-captioned case.

4.    I am over 18 years old. This Declaration is based upon my personal knowledge
and/or upon my review of business records of ExxonMobil.

5.    ExxonMobil is one of the largest publicly traded energy companies in the world. ExxonMobil engages in the production, refining, and marketing of fossil fuels and related products. ExxonMobil and its affiliates and subsidiaries operate across the United States and internationally, and its products serve consumers, businesses, and governments worldwide.

6.    ExxonMobil is a member of both the U.S. Chamber of Commerce and the American Petroleum Institute.

7.    I am aware of Vermont's Climate "Superfund" Act, S.259 ("Act" or "Vermont's Act") and of the severe effect it will have on many of the Chamber and API's members.

8.    The Act defines "responsible party" as "any entity or a successor in interest to an entity that during any part of the covered period was engaged in the trade or business of extracting fossil fuel or refining crude oil and is determined by the Agency [of Natural Resources] attributable to for [sic] more than one billion metric tons of covered greenhouse gas emissions." 10 V.S.A. § 596(22). This definition "does not include any person who lacks sufficient connection with the State to satisfy the nexus requirements of the U.S. Constitution." *Id.*

9.    The Act specifies that the U.S. Environmental Protection Agency's Emissions Factors for Greenhouse Gas Inventories as applied to the fossil fuel volume data are used to determine the amount of covered greenhouse gas emissions attributable to any entity from the fossil fuels attributable to the entity. *Id.* §598(d). As I understand the Act, such a determination will need to be made for every worldwide entity engaged in the extraction or refining of crude oil for the 30-year period set forth in the Act.

10.    The Act imposes "cost recovery demands" on "responsible part[ies]." To determine each responsible party's cost recovery demand, the Act requires the State Treasurer to "submit . . .

an assessment of the cost to State of Vermont and its residents of covered greenhouse gas emissions." *Id.* § 599c (hereinafter "Total Cost Assessment"). That "assessment shall include":

> a. "[A] summary of the various cost-driving effects of covered greenhouse gas emissions on the State of Vermont, including effects on public health, natural resources, biodiversity, agriculture, economic development, flood preparedness and safety, housing and any other effect that the State Treasurer, in consultation with the Climate Action Office, determines is relevant";
>
> b. "[A] categorized calculation of the costs [of each of the 'cost-driving effects' described above] that have been incurred and are projected to be incurred in the future within the State of Vermont"; and
>
> c. "[A] categorized calculation of the costs that have been incurred and are projected to be incurred in the future within the State of Vermont to abate the effects of covered greenhouse gas emissions" during the 30-year period "on the State of Vermont and its residents."

*Id.* §599c(1)-(3). The calculations required by the Act, however, do not consider the benefits that fossil fuels have provided the State of Vermont and its residents for the same period. Consequently, the cost recovery demand number will not reflect an accurate balancing of the severity and extent of any alleged harm from GHG emissions against the significant social value and utility that fossil fuels have provided to the people and the State of Vermont.

11.     Each responsible party's cost recovery demand is calculated as follows: "the cost recovery demand shall be equal to an amount that bears the same ratio to the cost to the State of Vermont and its residents . . . from covered greenhouse gas emissions as the responsible party's

applicable share of covered greenhouse gas emissions bears to the aggregate applicable shares of covered greenhouse gas emissions." *Id.* § 598(b).

12. My understanding is that under the Act, Vermont's Agency of Natural Resources (ANR) is required to issue a cost recovery demand to any entity it identifies as a responsible party.

13. Vermont officials have made clear that ExxonMobil will be a responsible party under the Act.

14. The State is currently pursuing climate-related claims against ExxonMobil and other energy producers in litigation. *Vermont v. Exxon Mobil Corp.*, No. 21-CV-02778 (Vt. Super. Ct. Sept. 14, 2021). In that lawsuit, Vermont asserts jurisdiction over ExxonMobil and seeks monetary and injunctive relief for allegedly deceptive statements made about climate change. ExxonMobil has argued in that lawsuit and continues to argue that the State of Vermont does not have jurisdiction over ExxonMobil, but Vermont continues to assert jurisdiction over ExxonMobil.

15. The legislative history of the Act includes data and reports identifying ExxonMobil as one of the targets of the Act. I understand that State officials testified to the Legislature that Vermont had already asserted jurisdiction over ExxonMobil and would do so again under the Act. (I understand that ExxonMobil will contest whether the State of Vermont can exercise jurisdiction over ExxonMobil.)

16. Therefore, it is clear that Vermont intends to and will issue a cost recovery demand to ExxonMobil and other energy producers under the Act.

17. Consequently, our internal team of engineers, analysts, planners, and accountants will need to invest significant resources to assess Vermont's cost recovery demand against ExxonMobil. As part of this effort, the company must actively collect and rigorously analyze comprehensive global data on extraction and refining activities throughout the relevant period in

order to determine and validate the percentage of emissions purportedly attributable to ExxonMobil, as well as substantiate the cost elements included in the recovery demand.

18.     Our team also will be required to review, audit and attempt to validate the Total Cost Assessment calculations of ANR.

19.     Absent an injunction barring the State from enforcing the Act against ExxonMobil, ExxonMobil will incur irrecoverable compliance costs.

20.     The consequences of this law are immediate and severe—ExxonMobil will be required to take significant steps to prepare for compliance with Vermont's Act.

21.     These steps include the assembly of a multidisciplinary team of legal, scientific, planning, environmental, accounting, and policy personnel to evaluate the methodology and calculus of determination of greenhouse gas emissions based on the Act's calculations utilizing the U.S. Environmental Protection Agency's Emissions Factors. This includes identifying and reviewing thirty years of extraction and refining data, including emissions data and global operations records. ExxonMobil also will be required to model various cost recovery scenarios based on anticipated rulemaking to assess potential liability and prepare for cost recovery demands.

22.     The imposition of the cost recovery demand on ExxonMobil and other companies is poised to significantly affect the U.S. fossil fuel industry. The penalties anticipated from the State of Vermont for all responsible parties could range from several billion to tens of billions of dollars, adding to the $75 billion already being levied by the State of New York pursuant to its recently enacted Climate Change "Superfund" Act (S.2129B, Chapter 679, Laws of 2024 as amended by S.824). These financial burdens will primarily fall on U.S.-based companies. In contrast, foreign entities—particularly those owned by sovereign governments—are likely to

avoid these costs due to jurisdictional limitations that prevent enforcement by state authorities. The Vermont Act, and likewise New York's legislation, will place U.S. fossil fuel companies, including ExxonMobil, at a substantial competitive disadvantage, both domestically and globally.

23.    Preparing for compliance with the Act must start before Vermont issues a cost recovery demand, given that it will take more than six months to hire and organize employees, consultants, and outside counsel, collect and review data, and develop internal strategies and systems for completing tasks needed to ensure compliance.

24.    Further, the ANR is required to adopt rules for implementing the Act. § 599a(b). ExxonMobil will have to spend resources to participate in that rulemaking process, including analyzing any proposed rules, commenting on proposed rules, participating in any public hearings on the rules, and analyzing the potential impact of final rules. The costs to participate in the rulemaking process required by the unlawful Act will require ExxonMobil to take steps such as hiring outside counsel or consultants, rearranging employee priorities, and compiling information and data to support comments.

25.    In parallel, ExxonMobil must prepare to defend against the Act's payment demands. This preparation includes hiring counsel to research and develop defenses, review potential constitutional and statutory challenges, and advise on strategy. These efforts require substantial legal fees now, because effective defenses depend on advance investigation and expert analysis. Waiting until a payment demand is issued would compromise ExxonMobil's ability to effectively respond within required timeframes.

26.    In short, the Act imposes imminent and irreparable harm on ExxonMobil. Without the Act, ExxonMobil would not face these costs or the diversion of resources. So long as the Act remains in force and its threat persists, ExxonMobil must continue to devote significant time,

money, and personnel to compliance and defense preparation, with no possibility of recovering those losses due to Vermont's sovereign immunity.

27.    Additionally, the State of Vermont's cost recovery demands will result in notable consequences for ExxonMobil, its projects, and its planning. These reallocations could also strain existing project timelines and impact ExxonMobil's strategic initiatives, emissions reduction, and low carbon solutions. To put it simply, the State of Vermont's significant cost recovery demands would have to be paid, and the funds to make that payment would have to come from somewhere, forcing energy producers like ExxonMobil to make strategic business decisions about capital investments, production volumes, planning, prices, contracts, and personnel.

28.    ExxonMobil supports the relief sought by the Plaintiffs. An order from the U.S. District Court for the District of Vermont declaring that the Act is unconstitutional and enjoining enforcement of the Act against members of the U.S. Chamber of Commerce and the American Petroleum Institute would protect ExxonMobil from being forced to incur these irrecoverable costs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on   September $\underline{11}$, 2025, in Cambridge, Massachusetts.

By: _____

Vijay Swarup