# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE, <br>    Plaintiffs, <br><br>WEST VIRGINIA, et al., <br>    Intervenor-Plaintiffs, <br><br> v. <br><br>JULIE MOORE, in her official capacity as the Secretary of the Vermont Agency of Natural Resources, and <br>JANE LAZORCHAK, in her official capacity as the Director of the Vermont Agency of Natural Resources Climate Action Office, <br>    Defendants, <br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION, <br>    Intervenor-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:24-cv-1513 |

## INTERVENOR STATES' RESPONSE TO
## INTERVENOR-DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Intervenor-Defendants' "notice of supplemental authority"—really, an uninvited supplemental brief—misunderstands both what EPA has done in its recent regulatory action and the arguments that the States make here. At bottom, EPA has not purported to change the playing field when it comes to the Clean Air Act's preemptive effect. Quite the opposite: the agency *disclaimed* any intent to do so. And the States have never argued that certain *exercises* of the agency's statutory authority have preemptive effect. Were that so, then the preemption question would shift from administration to administration. At the end of the day, the text of the Clean Air Act remains the same, and it's that text that decides the question here. Once those two bottom-line principles are understood, then Intervenor-Defendants' notice of supplemental authority becomes irrelevant.

At the outset, Intervenor-Defendants misstate EPA's position. They say EPA "concluded that it lacks statutory authority under the Clean Air Act to regulate greenhouse gas emissions from vehicles." Supp. Br. 1. But that statement is only half true. EPA's Endangerment Finding rescission is premised on two statutory prerequisites.

*First*, EPA concluded that the CAA "does not authorize [the agency] to prescribe [greenhouse gas] emission standards *based on global climate change concerns*." *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7686, 7695 (Feb. 18, 2026) (emphasis added). "Air pollution" as used in CAA Section 202(a)(1) "meant pollution that harms public health or welfare through local or regional exposure, rather than gases that are not harmful in that sense but may contribute to global phenomena on a far more attenuated chain of causation." *Id.* at 7722. Put another way, EPA can only regulate vehicle emissions causing "smog and health and welfare

1

impacts related to inhalation and physical contact," not "gases that may endanger public health or welfare only on a global scale and through an attenuated and indirect causal chain." *Id.* at 7714.

*Second*, EPA recognized that it erred by "sever[ing] . . . the consideration of contribution and fail[ing] to engage with the standards that must issue when making such a finding." 91 Fed. Reg. at 7695.  Section 202(a)(1) confers regulatory authority only if EPA first determines that emissions "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health and welfare." 42 U.S.C. § 7521(a)(1).  In other words, "a finding that the relevant air pollutant emissions cause or contribute to air pollution that endangers public health or welfare is a prerequisite to prescribing emission standards." 91 Fed. Reg. at 7704.  So, while the CAA's "air pollutant" definition "embraces all airborne compounds of whatever stripe," *Massachusetts v. EPA*, 549 U.S. 497, 529 (2007) (quoting 42 U.S.C. § 7602(g)), fitting greenhouse gases into that definition doesn't—standing alone—empower EPA to impose limits on those gases under Section 202(a)(1).

Putting those prerequisites together, EPA determined that any prior findings that greenhouse gas emissions cause global climate change were not enough to trigger EPA's particular authority to regulate motor vehicle emissions under Section 202(a)(1).

That determination doesn't mean EPA lacks the power to regulate—or that the CAA doesn't regulate—greenhouse gas emissions.  On the contrary, EPA has the power to regulate, through the CAA, greenhouse gas emissions from motor vehicles if they meet the statutory criteria.  Should EPA determine that such emissions cause local or regional harm to the public health, then it could issue emissions standards. EPA thus has "the power to decide" the endangerment question.  *Nat. Res. Def. Council v. Regan*, 67 F.4th 397, 401 (D.C. Cir. 2023).  EPA decides "*whether* and how to regulate" interstate emissions.  *Am. Elec. Power, Inc. v. Connecticut*, 564 U.S. 410, 426 (2011)

(emphasis added). EPA has now "decline[d] to regulate carbon-dioxide emissions" from motor vehicles. *Id.* But the States still "have no warrant … to upset the Agency's expert determination." *Id.* EPA's regulatory decision does not change whether the Clean Air Act preempts Vermont's Act.

The Endangerment Finding rescission also leaves untouched the Clean Air Act's many other mechanisms for regulating interstate air pollution. EPA sets National Ambient Air Quality Standards. 42 U.S.C. §§ 7408-10. These standards determine "the maximum airborne concentration of [the] pollutant that the public health can tolerate." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 465 (2001); 42 U.S.C. § 7409(b). And the CAA regulates greenhouse gas emissions directly through the Montreal Protocol on Substances that Deplete the Ozone Layer and subsequent amendments. 42 U.S.C. §§ 7671(9), 7671c, 7671d. The Montreal Protocol "gradually eliminat[es] the production and consumption of ozone depleting substances to limit their damage to the earth's ozone layer." *International Actions – The Montreal Protocol on Substances that Deplete the Ozone Layer*, EPA, https://tinyurl.com/4tm3fyvn (last updated Jan. 13, 2026); *see also* 42 U.S.C. §§ 7671c, 7671d. The Kigali Amendment gradually eliminates production and consumption of certain greenhouse gas emissions, including hydrofluorocarbons. Kigali Amendment to the Montreal Protocol on Substances that Deplete the Ozone Layer art. 2J, Oct. 15, 2016, S. Treaty Doc. No. 117-1, C.N.872.2016.TREATIES-XXVII.2.f, *available at* https://tinyurl.com/uvwr29tf. And the CAA grants the EPA Administrator authority to regulate "any substance, practice, process, or activity [that] may reasonably be anticipated to affect the stratosphere, especially ozone in the stratosphere" if it "may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7671n. So, again, the EPA has "the power to decide" whether to regulate greenhouse gas emissions. *Nat. Res. Def. Council*, 67 F.4th at 401. That delegation preempts Vermont's Act.

The rescission rule itself confirms—rather than undermines—the Clean Air Act's comprehensive framework and its preemptive effect on state statutes. EPA recognizes that "section 202 has remained a critical part of the comprehensive framework of regulating air pollution" alongside the NAAQS program and other statutory authorities. 91 Fed. Reg. at 7696. And Section 209 prohibits States from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). EPA's rescission rule doesn't try to amend that language. Rather, it maintains that "section 209(a) continues to apply by its own force to preempt State laws, regulations, and causes of action that adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or engines." 91 Fed. Reg. at 7738. The CAA's express preemptive effect remains intact, in part, because "new motor vehicles and engines that have been subject to GHG emission standards remain subject to Title II of the CAA"—yet another non-Section 202(a)(1) regulation. *Id.* at 7739. EPA also recognizes that, "independently of CAA section 209(a)'s express preemption provision," the Clean Air Act "continues to preempt state common-law claims and statutes that seek to regulate out-of-state emissions." *Id.* So Intervenor-Defendants miss the point in arguing that, "absent the power to act, the [EPA] has no power to preempt." *N.Y. State Telecomms. Ass'n, Inc. v. James*, 101 F.4th 135, 155 (2d Cir. 2024) (cleaned up). The point here isn't what the agency has done—it's what *Congress* has.

All this means that EPA's rescission rule doesn't change the preemption analysis. The decision to not regulate doesn't undermine the CAA's "comprehensive statutory scheme." *City of New York v. Chevron Corp.*, 993 F.3d 81, 99 (2d Cir. 2021). The Second Circuit didn't rely on the Endangerment Finding in deciding that the statute "anoints the EPA as the primary regulator of [domestic] greenhouse gas emissions." *Id.* (cleaned up). And that court didn't rely on the

4

Endangerment Finding in interpreting the Clean Air Act to "permit only state lawsuits brought under the law of the pollution's *source* state." *Id.* at 100 (cleaned up). Rather, the Second Circuit relied on authority like *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), which established that States may not impose liability for out-of-state pollution under their own law. That holding has nothing to do with the Endangerment Finding. No wonder, then, that EPA's rescission rule expressly confirms that the CAA "continues to preempt." 91 Fed. Reg. at 7739. Put simply, the Endangerment Finding rescission has no effect on field or conflict preemption. The Clean Air Act still preempts Vermont's Act.

Federal common law only bolsters this conclusion. States have never been responsible for regulating interstate air pollution. Before the Clean Air Act, federal common law governed the field of interstate air pollution regulation. "For over a century, a mostly unbroken string of cases has applied federal law to disputes involving interstate air or water pollution." *City of New York*, 993 F.3d at 91 (collecting cases). So, if the Endangerment Finding rescission rule somehow blunted the Clean Air Act's preemptive force, then federal common law—not a patchwork of State extraterritorial regulation—would take its place. And relatedly, the Supreme Court's recent grant of certiorari in *Suncor Energy, Inc. v. Commissioners of Boulder County*, No. 25-170 (U.S. Feb. 23, 2026), does nothing to rehabilitate Intervenor-Defendants' position, either. That case asks whether federal law preempts state-law claims seeking to regulate interstate greenhouse gas emissions. If the Supreme Court holds that federal law governs the interstate-pollution question, then it defeats Vermont's Act. If the Court narrows federal common law preemption, statutory preemption remains fully operative. Either way, the Act falls.

| | Respectfully submitted, |
|---|---|
| Dated: March 13, 2026 | JOHN B. MCCUSKEY<br>  ATTORNEY GENERAL OF WEST VIRGINIA |
| */s/ Michael W. Kirk*<br>Michael W. Kirk\*<br>Adam P. Laxalt\*<br>Megan M. Wold\*<br>Bradley L. Larson\*<br>Cooper & Kirk, PLLC<br>1523 New Hampshire Ave., N.W.<br>Washington, D.C., 20036<br>Telephone: (202) 220-9600<br>Facsimile: (202) 220-9601<br>mkirk@cooperkirk.com<br>alaxalt@cooperkirk.com<br>blarson@cooperkirk.com<br>mwold@cooperkirk.com | */s/ Caleb B. David*<br>Michael R. Williams\*<br>  *Solicitor General*<br>Caleb B. David\*<br>  *Deputy Solicitor General*<br><br>Office of the Attorney General<br>of West Virginia<br>State Capitol Complex<br>Building 1, Room E-26<br>1900 Kanawha Blvd. E<br>Charleston, WV 25301<br>(304) 558-2021<br>michael.r.williams@wvago.gov<br>caleb.b.david@wvago.gov |
| */s/ Brady C. Toensing*<br>Brady C. Toensing<br>diGenova & Toensing<br>1775 Eye Street NW<br>Suite 1150<br>Washington, DC 20006<br>(202) 297-4245<br>Brady@digtoe.com | |
| | *Counsel for State of West Virginia* |
| STEVE MARSHALL<br>  ATTORNEY GENERAL OF ALABAMA | STEPHEN J. COX<br>  ATTORNEY GENERAL OF ALASKA |
| */s/ Robert M. Overing*<br>Robert M. Overing\*<br>  *Deputy Solicitor General*<br><br>Office of the Attorney General<br>of Alabama<br>501 Washington Avenue<br>Montgomery, AL 36130<br>(334) 242-7300<br>Robert.Overing@AlabamaAG.gov<br><br>*Counsel for State of Alabama* | */s/ Thomas Mooney-Myers*<br>Thomas Mooney-Myers\*<br>  *Assistant Attorney General*<br><br>Alaska Department of Law<br>1031 W. 4th Ave., Ste. 200<br>Anchorage, AK 99501<br>(907) 269-5100<br>thomas.mooney-myers@alaska.gov<br><br>*Counsel for State of Alaska* |

<div style="display: flex;">

<div>

Tim Griffin
  Attorney General of Arkansas

/s/ Autumn Hamit Patterson
Autumn Hamit Patterson*
  Solicitor General

Office of the Arkansas Attorney General
323 Center St., Suite 200
Little Rock, AR 72201
(501) 682-3661
Autumn.Patterson@Arkansasag.Gov

*Counsel for State of Arkansas*


Christopher M. Carr
  Attorney General of Georgia

John Henry Thompson
  Solicitor General

/s/ Elijah O'Kelley
Elijah O'Kelley*
  Deputy Solicitor General

Office of the Attorney General of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334
(470) 816-1342
eokelley@law.ga.gov

*Counsel for State of Georgia*

</div>

<div>

James Uthmeier
  Attorney General of Florida

David Dewhirst
  Solicitor General

/s/ Christine Pratt
Christine Pratt (FBN 0100351)*
  Assistant Solicitor General

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
Christine.pratt@myfloridalegal.com

*Counsel for the State of Florida*


Raúl R. Labrador
  Attorney General of Idaho

/s/ Michael A. Zarian
Michael A. Zarian #12418ID*
  Solicitor General

Office of the Idaho Attorney General
700 W. Jefferson St., Suite 210
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400
michael.zarian@ag.idaho.gov

*Counsel for State of Idaho*

</div>

</div>

7

THEODORE E. ROKITA
  ATTORNEY GENERAL OF INDIANA

/s/ James A. Barta
James A. Barta*
  *Solicitor General*

Indiana Attorney General's Office
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
james.barta.atg.in.gov

*Counsel for State of Indiana*

KRIS W. KOBACH
  ATTORNEY GENERAL OF KANSAS

/s/ Jay Rodriguez
Jay Rodriguez*
  Assistant Attorney *General*

Office of the Kansas Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel.: (785) 368-8539
Fax: (785) 296-3131
Jay.rodriguez@ag.ks.gov

*Counsel for State of Kansas*

BRENNA BIRD
  ATTORNEY GENERAL OF IOWA

/s/ Eric H. Wessan
Eric H. Wessan*
  *Solicitor General*

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

RUSSELL COLEMAN
  ATTORNEY GENERAL OF KENTUCKY

/s/ Victor B. Maddox
Victor B. Maddox (KBA No. 43095)*
Jason P. Woodall (KBA No. 95013)*

Kentucky Office of the Attorney General
310 Whittington Parkway, Suite 101
Louisville, KY 40222
(502) 696-5300
Victor.Maddox@ky.gov
Jason.Woodall@ky.gov

*Counsel for Commonwealth of Kentucky*

8

| | |
|---|---|
| LIZ MURRILL<br>  ATTORNEY GENERAL OF LOUISIANA | CATHERINE HANAWAY<br>  ATTORNEY GENERAL OF MISSOURI |
| /s/ *J. Benjamin Aguiñaga*<br>J. Benjamin Aguiñaga*<br>  *Solicitor General* | /s/ *Samuel C. Freedlund*<br>Samuel C. Freedlund *<br>  *Deputy Solicitor General* |
| Office of the Louisiana Attorney General<br>1885 N. Third Street<br>Baton Rouge, LA 70802<br>(225) 326-6705<br>AguinagaB@ag.louisiana.gov | Office of The Missouri Attorney General<br>Solicitor General<br>Office of Missouri Attorney General<br>815 Olive Street<br>St Louis, MO 63101<br>717-802-2077<br>Email: Samuel.freedlund@ago.mo.gov |
| *Counsel for State of Louisiana* | *Counsel for State of Missouri* |
| AUSTIN KNUDSEN<br>  ATTORNEY GENERAL OF MONTANA | MICHAEL T. HILGERS<br>  ATTORNEY GENERAL OF NEBRASKA |
| /s/ *Christian B. Corrigan*<br>Christian B. Corrigan*<br>  *Solicitor General* | /s/ *Zachary A. Viglianco*<br>Zachary A. Viglianco*<br>  *Principal Deputy Solicitor General* |
| Montana Department of Justice<br>215 N. Sanders Street<br>Helena, Montana 59601<br>(406) 444-2707<br>christian.corrigan@mt.gov | Nebraska Department of Justice<br>2115 State Capitol<br>Lincoln, Nebraska 68509<br>Tel.: (402) 471-2683<br>Fax: (402) 471-3297<br>zachary.viglianco@nebraska.gov |
| *Counsel for State of Montana* | *Counsel for State of Nebraska* |

| | |
|---|---|
| DREW H. WRIGLEY<br>  ATTORNEY GENERAL OF NORTH DAKOTA | DAVE YOST<br>  ATTORNEY GENERAL OF OHIO |
| */s/ Philip Axt*<br>Philip Axt*<br>  *Solicitor General*<br><br>600 E. Boulevard Ave., Dept. 125<br>Bismarck, ND 58505<br>Phone: (701) 328-2210<br>Email: pjaxt@nd.gov<br><br>*Counsel for the State of North Dakota* | */s/ Mathura Sridharan*<br>Mathura Sridharan *<br>  *Solicitor General*<br><br>30 East Broad Street, 17th Floor<br>Columbus, Ohio 43215<br>614-466-8980<br>Email: mathura.sridharan@ohioago.gov<br><br>*Counsel for the State of Ohio* |
| GENTNER DRUMMOND<br>  ATTORNEY GENERAL OF OKLAHOMA | ALAN WILSON<br>  ATTORNEY GENERAL OF SOUTH CAROLINA |
| */s/ Garry M. Gaskins, II*<br>Garry M. Gaskins, II*<br>  *Solicitor General*<br><br>Office of the Attorney General of Oklahoma<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105<br>(405) 521-3921<br>garry.gaskins@oag.ok.gov<br><br>*Counsel for State of Oklahoma* | */s/ J. Emory Smith, Jr.*<br>J. Emory Smith, Jr.*<br>  *Solicitor General*<br><br>Office of the Attorney General of South Carolina<br>Post Office Box 11549<br>Columbia, South Carolina 29211<br>(803) 734-3680<br>esmith@scag.gov<br><br>*Counsel for State of South Carolina* |

MARTY J. JACKLEY
  ATTORNEY GENERAL OF SOUTH DAKOTA

*/s/ Emily Greco*
Emily Greco*
  *Assistant Attorney General*

South Dakota Attorney General's Office
1302 E. Highway 14, Suite 1
Pierre, South Dakota 57501
605-773-3215
emily.greco@state.sd.us

*Counsel for State of South Dakota*

KEN PAXTON
  ATTORNEY GENERAL OF TEXAS

Brent Webster
*First Assistant Attorney General*

Ralph Molina
*Deputy First Assistant Attorney General*

Ryan Walters
*Deputy Attorney General for Legal Strategy*

*/s/ Ryan G. Kercher*
Ryan G. Kercher*
  *Chief, Special Litigation Division*
Texas Bar No. 24060998

Zachary Berg*
  *Special Litigation Division*
Tex. State Bar No. 24107706

Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Ryan.Kercher@oag.texas.gov
Zachary.Berg@oag.texas.gov

*Counsel for State of Texas*

JONATHAN SKRMETTI, ATTORNEY GENERAL AND REPORTER OF TENNESSEE

*/s/ J. Matthew Rice*
J. Matthew Rice*
  *Solicitor General*

Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
615-532-6026
Email: matt.rice@ag.tn.gov

*Counsel for State of Tennessee*

DEREK E. BROWN
  ATTORNEY GENERAL OF UTAH

*/s/ Gary T. Wight*
Gary T. Wight (Utah Bar No. 10994)*
  *Assistant Attorney General*

1594 West North Temple, Suite 300
Salt Lake City, Utah 84116
(801) 538-7227
gwight@agutah.gov

*Counsel for State of Utah*

KEITH G. KAUTZ
  ATTORNEY GENERAL OF WYOMING

*/s/ Ryan Schelhaas*
Ryan Schelhaas*
  *Chief Deputy Attorney General*

Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for State of Wyoming*

**pro hac vice*