**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

|  |  |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE,<br><br>*Plaintiffs*,<br><br>and<br><br>STATE OF WEST VIRGINIA, et al.,<br><br>*Intervenor-Plaintiffs*,<br><br>v.<br><br>JULIE MOORE, in her official capacity as the Secretary of the Vermont Agency of Natural Resources, and JANE LAZORCHAK, in her official capacity as the Director of the Vermont Agency of Natural Resources Climate Action Office,<br><br>*Defendants*,<br><br>and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION,<br><br>*Intervenor-Defendants*. | Civil Action No. 2:24-cv-01513-MKL |

**PLAINTIFFS CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA
AND AMERICAN PETROLEUM INSTITUTE'S RESPONSE TO INTERVENOR
DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Intervenor Defendants' characterization of EPA's new final rule regarding the regulation of greenhouse gas emissions from motor vehicles, *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7686 (Feb. 18, 2026), is inaccurate. The final rule does nothing to undermine Plaintiffs' Clean Air Act preemption claim or the Second Circuit's binding precedent in *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021).

EPA's final rule concludes that Section 202(a)(1) of the Clean Air Act does not authorize EPA to prescribe greenhouse gas emission standards for new motor vehicles based on global climate change concerns.[1] 91 Fed. Reg. at 7702, 7710. In the rule, EPA expressly rejected Intervenor Defendants' broader suggestion that the Clean Air Act does not reach, and does not preempt state regulation of, greenhouse gases. *See id.* at 7739.

That conclusion follows existing Supreme Court precedent interpreting the Clean Air Act. In *Massachusetts v. EPA*, 549 U.S. 497 (2007), the Supreme Court held that "[b]ecause greenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant,'" under 42 U.S.C. § 7602(g), "EPA has the statutory authority to regulate the emission of such gases." *Massachusetts*, 549 U.S. at 532; *see also Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) ("*AEP*") ("*Massachusetts* made plain that emissions of carbon dioxide qualify as air pollution subject to regulation under the Act."). Later, in *AEP*, the Court confirmed that the Clean Air Act supplies the governing source of federal authority for regulating greenhouse gas emissions, including emissions with interstate effects. *See* 549 U.S. at 424. The Court also emphasized that Congress left to EPA

---

[1] The rule, which is limited to new light-duty, medium-duty, and heavy-duty motor vehicles and engines, does not amend EPA's existing regulations governing greenhouse gas emissions from other sources of air pollution, such as fossil fuel-fired power plants. *See* 91 Fed. Reg. at 7688.

the decision whether and how to regulate those emissions. *See id.* at 426 (holding that Congress, through the Clean Air Act, "delegated to EPA the decision *whether* and how to regulate" greenhouse gas emissions (emphasis added)). Permitting individual States to upset the balance struck by EPA in the exercise of its congressionally delegated authority under the Clean Air Act would disrupt Congress's comprehensive regulatory regime and "lead to chaotic confrontation between sovereign states," all of which could seek to impose their varying laws on the same out-of-state emissions. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496 (1987) (quoting *Illinois v. City of Milwaukee*, 731 F.2d 403, 414 (7th Cir. 1984)). As the Supreme Court held in a similar context when interpreting the Clean Water Act: "The application of affected-state laws" to out-of-state pollution thus "would be incompatible with the Act's delegation of authority [to EPA] and its comprehensive regulation of water pollution." *Id*. at 500.

Consistent with this precedent, EPA, in its final rule, emphasized that the Clean Air Act "continues to preempt state common-law claims and statutes that seek to regulate out-of-state emissions, independently of [Clean Air Act] section 209(a)'s express preemption provision for mobile-source emissions." 91 Fed. Reg. at 7739 (citing *City of New York*, 993 F.3d at 98-100; *Ouellette*, 479 U.S. at 492); *id.* at 7717 (discussing *Massachusetts*, 549 U.S. at 532). EPA went on to explain that it "retain[s] [its] authority to prescribe emission standards for any air pollutant that, in the Administrator's judgment, causes or contributes to air pollution that may reasonably be anticipated to endanger public health or welfare." *Id.* at 7739. And, citing *Ouellette* and *City of New York*, EPA noted that the Clean Air Act "does not empower states to apply their own law to control emissions occurring outside their own jurisdiction." EPA, Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards: Response to Comments at 297 (Feb. 2026), https://perma.cc/CL89-DQRH.

EPA also identified other sources of the Clean Air Act's preemptive effect on state regulation of greenhouse gases from vehicle and engine emissions. In particular, EPA confirmed that "[t]he repealed provisions in this final action also do not impact Federal preemption under [Clean Air Act] section 209(a)," which bars States from adopting or attempting to enforce emissions control from new motor vehicles or engines, and "continues to preempt Federal common-law claims for vehicle and engine emissions because Congress adopted a standard for when such emissions rise to the level of regulatory concern and 'delegated to EPA the decision whether and how to regulate' such emissions." 91 Fed. Reg. at 7739 (quoting *AEP*, 564 U.S. at 426). EPA also described its authority under "section 202" as "a critical part of the comprehensive framework of regulating air pollution" under the Clean Air Act, along with regulations under "Title II authorities for mobile sources working in tandem with the National Ambient Air Quality Standards (NAAQS) program and Title I authorities for stationary sources." *Id.* at 7696.

Therefore, EPA's final rule adheres—as it must—to Supreme Court precedent and is consistent with Plaintiffs' federal-law preclusion and preemption arguments. It does not change the fact that, under binding Supreme Court and Second Circuit precedent, Vermont may not impose liability for greenhouse gas emissions originating beyond its borders. *See* ECF 100-1 at 19-24; ECF 101 at 31-38; ECF 123 at 37-48. Indeed, EPA's final rule *could not* affect the impact of those binding precedents even if EPA had purported to do so (which it clearly did not), because the preemptive force of the Clean Air Act is determined exclusively by the courts in accordance with judicial precedent, regardless of any changes in agency rules. *See Loper Bright Ents. v. Raimondo*, 603 U.S. 369, 412-13 (2024).

EPA's final rule also provides no basis for Defendants to escape *City of New York*. First, the agency's rule has no bearing on the Second Circuit's conclusion that State attempts to impose

liability for global greenhouse gas emissions are "simply beyond the limits of state law." *City of New York*, 993 F.3d at 91-92 ("For over a century, a mostly unbroken string of cases has applied federal law to disputes involving interstate air or water pollution."). Second, the rule is consistent with *City of New York*'s reliance, in part, on *AEP* for its conclusions. *See id.* at 92-93, 95-96, 99-100. As noted above, *AEP* held that Congress, through the Clean Air Act, comprehensively addressed all air pollutants, including greenhouse gases, but "delegated to EPA the decision whether and how to regulate" greenhouse gas emissions. 564 U.S. at 426. Making such a decision, in the discrete context of applying Clean Air Act Section 202 to motor vehicle emissions, is *exactly* what the final rule does. *See* 91 Fed. Reg. at 7739 (citing *AEP*, 564 U.S. at 426); *cf. AEP*, 564 U.S. at 426 ("The Clean Air Act is no less an exercise of the Legislature's 'considered judgment' concerning the regulation of air pollution because it permits emissions *until* EPA acts. . . . Indeed, were EPA to decline to regulate carbon-dioxide emissions altogether at the conclusion of its ongoing . . . rulemaking [to set greenhouse-gas-emissions standards for fossil fuel-fired power plants], the federal courts would have no warrant to employ the federal common law of nuisance to upset the Agency's expert determination." (internal citation omitted)). Third, nothing in EPA's final rule alters *City of New York*'s application of *Ouellette* to hold that the Act did "not authorize the City's state-law claims" because those claims would impose liability on greenhouse gas emissions originating beyond New York's borders. *City of New York*, 993 F.3d at 99-100. Simply put, the Clean Air Act's savings clause does not authorize states to address conduct, including air pollution emissions, in other states, *id.*, and EPA's final rule provides no support for a contrary argument, *see* 91 Fed. Reg. at 7739 (citing *Ouellette*, 479 U.S. at 492).

5

Dated: March 13, 2026

Matthew B. Byrne
GRAVEL & SHEA PC
76 St. Paul Street, 7th Floor
Burlington, VT 05402-0369
Telephone: (802) 658-0220
Fax: (802) 658-1456
Email: mbyrne@gravelshea.com

*Counsel for Plaintiffs the Chamber of Commerce of the United States of America and American Petroleum Institute*

Kevin R. Palmer*
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
Telephone: (202) 463-5337

*Counsel for Plaintiff the Chamber of Commerce of the United States of America*

Ryan Meyers*
American Petroleum Institute
200 Massachusetts Avenue, NW,
  Suite 1200
Washington, DC 20001
Telephone: (202) 682-8000

*Counsel for Plaintiff American Petroleum Institute*

Respectfully submitted,

*/s/ Steven P. Lehotsky*

Steven P. Lehotsky*
Scott A. Keller*
Michael B. Schon*
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW,
  Suite 700
Washington, DC 20001
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: steve@lkcfirm.com
Email: scott@lkcfirm.com
Email: mike@lkcfirm.com

Jared B. Magnuson*
LEHOTSKY KELLER COHN LLP
3280 Peachtree Road NE
Atlanta, GA 30305
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: jared@lkcfirm.com

Meredith R. Pottorff*
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd., #407
Denver, CO 80206
Telephone: (512) 693-8350
Fax: (512) 727-4755
Email: meredith@lkcfirm.com

*Counsel for Plaintiffs the Chamber of Commerce of the United States of America and American Petroleum Institute*

*admitted pro hac vice

**Certificate of Service**

I, Steven P. Lehotsky, certify that on March 13, 2026, the foregoing was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ Steven P. Lehotsky
Steven P. Lehotsky