**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE,<br>*Plaintiffs*,<br>and<br>STATE OF WEST VIRGINIA, et al.,<br>*Intervenor-Plaintiffs,*<br>v.<br>JULIE MOORE, et al.,<br>*Defendants*,<br>and<br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION,<br>*Intervenor-Defendants.* | No. 2:24-cv-01513 |

**INTERVENOR-DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The decision in *West Virginia v. James*, 1:25-cv-00168 (BKS/DJS) (N.D.N.Y. Aug. 31, 2026), ECF No. 318 ("*James* Op."), is wrongly decided and should not be followed here. *James* erred in extending the holding in *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), to an entirely new context and drastically expanded *City of New York* in ways that contravene Supreme Court precedent governing statutory and foreign affairs preemption. First, *James* disregards the significant differences between a one-time retroactive assessment and tort claims seeking damages related to climate change. Second, it misreads settled preemption law, erroneously concluding that courts may depart from binding statutory preemption principles

whenever the "presumption against preemption" does not apply. Third, it expands the rarely invoked doctrine of foreign affairs field preemption to cover any state law that (purportedly) could "complicate" federal foreign policy.

***First***, *City of New York's* preemption analysis and holding should not be extended beyond the common-law tort claims at issue there. *See* ECF No. 84-1 at 33-39; ECF No. 113-1 at 33-37; ECF No. 127 at 14-18. *City of New York* addressed "whether a *nuisance suit seeking to recover damages* for the harms caused by global greenhouse gas emissions may proceed under New York law." 993 F.3d at 91 (emphasis added). *James* wrongly expanded this holding to apply to a statutory one-time retroactive assessment, which cannot amount to a regulation of emissions. Plaintiffs Chamber of Commerce and American Petroleum Institute concede (as they must) that "[n]othing energy producers can do today can affect their liability under the Act." Compl. ¶ 161, *Chamber of Com. v. James*, No. 1:25-cv-1307 (BKS/DJS) (N.D.N.Y. Feb. 28, 2025), ECF No. 1; ECF No. 113-1 at 4-5 & n.4; ECF No. 127 at 16 & n.19.

The lack of any prospective effect is a critical difference between the Act and the tort claims at issue in *City of New York. See* ECF No. 84-1 at 37-39; ECF No. 113-1 at 4-9, 36-37; ECF No. 127 at 2-5, 14-17 & nn.15-16. Tort law establishes ongoing standards of care—which is why the *City of New York* court assumed that tort claims would lead to "ongoing liability." 993 F.3d at 93. In concluding that a "significant damages award" could compel a "new 'means of pollution control,'" the court relied on a tort case. *Id.* (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498 n.10 (1987)). The plaintiff in *City of New York* conceded that the tort damages it sought could work production-side changes, and the court found that the only way for the defendants to avoid future tort liability would be to cease production. *See id.*

It was for this reason that *City of New York* found that the tort claims at issue were "previously governed by federal common law," 993 F.3d at 99—specifically, the federal common law that applied when a state brought a nuisance action "to abate pollution emanating from another State," *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 421 (2011). *James* recognized that whether the claims were "previously governed by federal common law" was a predicate for *City of New York*'s holding, *James* Op. at 50, yet nowhere assessed whether this predicate was satisfied for the New York Act. It is not: The one-time retroactive assessments imposed by the New York and Vermont Acts, which do not control emissions and impose no ongoing duty of care, are far removed from this body of federal common law. *See* ECF No. 84-1 at 34-37; ECF No. 113-1 at 34-35; ECF No. 127 at 17-18.

*James* also fails to explain how a purely retroactive assessment could be regulatory. The court merely deems New York's cost recovery demands to be "damages" and holds that "damages" can have regulatory effects. *See James* Op. 43-46. *James* neither cites any authority supporting the proposition that a one-time retroactive cost assessment regulates future emissions as a matter of law nor explains how a retroactive assessment regulates future conduct.

Even if the Act's putative indirect forward-looking impacts on fossil fuel production could amount to regulation—which they cannot, *see* ECF No. 113-1 at 4-6; ECF No. 127 at 2-3—Defendants here, as in New York, have proffered expert economic testimony disputing Plaintiffs' claims regarding potential future impacts of the Act. The *James* court wrongly disregarded such evidence as "not material." *James* Op. 46 n.23. In addition, the sizes of the assessments under the Vermont Act are unknown. While the New York Act sets the total cost recovery amount at $75 billion, the Vermont Act requires the State to first complete a report on the cost to Vermont of covered greenhouse gas emissions, Vt. Stat. Ann. tit. 10, § 599c, and then

determine which portion of that total cost is attributable to responsible parties and apportion that subset of the total cost among responsible parties, *see id*. § 598(b). Because the cost recovery demands are unknown and Plaintiffs' claims of future impacts are disputed by competent evidence, the Court cannot hold, on summary judgment, that the Vermont Act's assessments will have any regulatory effect.

Further, *James* misses the importance of *Hencely v. Fluor Corp.*, which reiterates that "there is no federal pre-emption *in vacuo*, without a constitutional text or a federal statute to assert it" and that "federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress." 146 S. Ct. 1086, 1093 (2026) (cleaned up). *James* cannot be reconciled with *Hencely's* emphasis on textual analysis. *James* does not identify any constitutional provision that preempts the New York Act; does not conclude that federal common law preempts the Act; and does not identify any basis for field or conflict preemption by the Clean Air Act. *James* Op. 49-50, 54-56. It holds only that the Clean Air Act does not expressly "authorize[]" the New York Act, *James* Op. 55, which is not a proper application of settled preemption law.

***Second,*** *James* gets statutory preemption analysis wrong. At the outset, *James* should have applied the presumption against preemption: the New York Act, like the Vermont Act, falls within state sovereign powers to raise revenue to protect the health and safety of its citizens. *See* ECF No. 113-1 at 32-33; ECF No. 84-1 at 4-6. Beyond that, *James* wrongly holds that courts are "not required to conduct a 'traditional statutory preemption analysis'" whenever the presumption against preemption does not apply. *James* Op. 54. This goes far beyond *City of New York*'s limited holding and is in direct conflict with longstanding Supreme Court precedent. Even where courts determine the presumption does not apply, they nonetheless apply a standard statutory

preemption analysis—meaning they analyze the federal statute to determine express, field, or conflict preemption. *See, e.g.*, *United States v. Locke*, 529 U.S. 89, 108-16 (2000) (looking to both whether conflict and field preemption should apply in analyzing state laws); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) (concluding that state law fraud claims were preempted because they conflicted with federal law).[1] As the Second Circuit has explained, "the presumption against preemption usually goes to the weight to be given to the lack of an express statement overriding state law." *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 82 (2d Cir. 2019). The absence of the presumption does not mean that a court is free to disregard the other steps of the preemption analysis. And it certainly does not mean that any state law not expressly authorized by a federal statute is automatically preempted.

*James's* holding to the contrary subverts the principle that preemption of state statutes is "always a matter of congressional intent." *Id.*; *see also* ECF No. 84-1 at 27-33; ECF No. 113-1 at 32, 37 n.32. Merely "[i]nvoking some brooding federal interest or appealing to a judicial policy preference" is "never . . . enough to win preemption of state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality op.). As *Hencely* confirms, Plaintiffs' failure to point to a specific "constitutional or statutory text," 146 S. Ct. at 1093, is fatal.

***Third***, *James* erroneously expands the rarely invoked doctrine of foreign affairs field preemption to cover a state law that purportedly raises only "foreign policy concerns." *James* Op. 61-62. To be preempted under the doctrine, a state law must do more than have "some

---

[1] *James's* quote from *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947), *see James* Op. at 52, merely noted one way in which Congress may *overcome* the presumption against preemption: by legislating in "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230. But neither that case nor any other cited by Plaintiffs or *James* supports the proposition that courts should flip the presumption on its head and assume a state statute is preempted.

incidental or indirect effect in foreign countries," *Clark v. Allen*, 331 U.S. 503, 517 (1947), but must in fact be "establish[ing] its own foreign policy," *Zschernig v. Miller*, 389 U.S. 429, 441 (1968). For example, *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012) (en banc), on which *James* relied, involved a state law that "expresse[d] a distinct political point of view" on foreign countries' conduct by providing "a friendly forum for [only] those who suffered from certain foreign events." *Id*. at 1075-76; *see also* ECF No. 113-1 at 59 (explaining that field preemption cases all feature states taking sides in a foreign policy conflict).

*James* relied on *City of New York*'s observation that permitting federal common law nuisance claims to proceed against foreign producers could "complicate" foreign policy. *James* Op. 60 (quoting *City of New York*, 993 F.3d at 101-03). But that says nothing about whether a state law that applies equally to domestic and foreign companies and can only affect foreign companies that have sufficient connections to Vermont amounts to a state "establish[ing] its own foreign policy." *Zschernig*, 389 U.S. at 441. And *City of New York's* animating concern was that applying *"judge-made"* rules to foreign emissions (*see* 993 F.3d at 101 (emphasis added)) could create separation of powers problems—a concern that does not apply to a state statute.

Before *James*, no court had applied foreign affairs field preemption to invalidate a state law that addresses a state problem and treats domestic and foreign companies identically. This court should not be the second.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Bridget Asay*
Bridget Asay
Michael Donofrio
STRIS & MAHER LLP

15 East State Street, Suite 2
Montpelier, VT 05602
Phone: (802) 858-4285
basay@stris.com

*Counsel for Northeast Organic Farming Association of Vermont*

/s/ Adeline S. Rolnick
Adeline S. Rolnick
Natural Resources Defense Council, Inc.
1152 15th Street, Suite 300
Washington, DC 20005
Phone: (202) 513-6240
arolnick@nrdc.org

Mitchell S. Bernard
Natural Resources Defense Council, Inc.
40 West 20th Street, 11th Floor
New York, NY 10011
Phone: (212) 727-4469
mbernard@nrdc.org

*Counsel for Northeast Organic Farming Association of Vermont and Conservation Law Foundation*

/s/ Elena M. Mihaly
Elena M. Mihaly
Conservation Law Foundation, Inc.
15 East State Street, Ste. 4
Montpelier, VT 05602
Phone: (802) 622-3012
emihaly@clf.org

*Counsel for Conservation Law Foundation*