**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE,<br>Plaintiffs,<br>and<br><br>STATE OF WEST VIRGINIA et al.,<br>Intervenor-Plaintiffs,<br>v.<br><br>JULIE MOORE et al.<br>Defendants,<br>and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION,<br>Intervenor-Defendants. | Case No. 2:24-cv-01513 |

**STATE DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**<u>NOTICE OF SUPPLEMENTAL AUTHORITY (ECF No. 162)</u>**

The Northern District of New York's recent decision in *West Virginia v. James*, No. 1:25-cv-00168, 2026 WL 2568355 (N.D.N.Y. Aug. 31, 2026), conflicts with settled Supreme Court precedent governing statutory preemption analysis and misapplies well-established common law preemption principles. Its analysis goes well beyond the Second Circuit's decision in *City of New York v. Chevron*, 993 F.3d 81 (2d Cir. 2021). This Court should not follow the Northern District of New York.

**1.** The *James* decision creates a startling new rule of statutory preemption—here, purported "Clean Air Act" preemption—that cannot be squared with decades of Supreme Court precedent. Under the Northern District of New York's rule, a court first determines whether a state statute addresses issues that would have touched on federal common law before Congress

acted in the area; that is, in the court's view, whether the state statute "address[es] issues that demand a unified federal standard." *James*, slip op. at 52-53. If so, the state statute is not entitled to the normal presumption *against* preemption but rather a presumption in *favor* of preemption. *Id*. at 52. And that presumption can be overcome only if the relevant federal statute affirmatively "authorizes" the state to act. *Id*. at 54-55.

That is not how preemption works. The Supreme Court has admonished that preemption must flow from constitutional or statutory text, not from a "freewheeling inquiry into whether a state statute is in tension with federal objectives." *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (quoting *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (internal citation and quotation omitted)); *see Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (lead opinion of Gorsuch, J.) ("Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of state law."). In conditioning well-established statutory preemption analysis on whether a state law "address[es] issues that demand a federal standard"—i.e., by inserting the federal courts' "modest,"[1] "severely limited,"[2] common-law displacement authority into the statutory preemption analysis—the *James* decision flouts the Supreme Court's mandate of judicial modesty.

Worse, the *James* court's presumption in favor of preemption inverts traditional preemption analysis and the principles of federalism underlying the doctrine. Preemption is "a serious intrusion into state sovereignty." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488 (1996). Thus, courts have required an actual conflict between state and federal law—that is, there is no presumption in *favor* of preemption—even when states act in areas of federal concern. *See Boyle*

[1] *Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 136 (2020).

[2] *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001).

*v. United Techs. Corp.*, 487 U.S. 500, 508 (1988) (requiring "significant conflict" between state and federal law even where state is acting in area of federal interest); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-48 (2001) (analyzing state law that "polic[ed] fraud against federal agencies" under traditional statutory preemption principles); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313-14 (2d Cir. 2005) (applying traditional preemption analysis even where statute operated in federal sphere and no presumption against preemption applied); Vt. SJ Reply at 8 (ECF No. 128). *James*' analysis cannot be squared with those cases.

To be clear, *James* creates a roving new preemption test that allows courts to strike down state legislation any time they decide there is a need for uniformity at the national level, even where Congress has spoken on the issue and has chosen not to preempt state law. The sweeping scope of this new test is evident in the court's proclamation that it does not even matter whether the Constitution or federal common law would (or could) actually preempt the state statute. *See James*, slip op. at 50 ("The Court need not resolve whether the Constitution or federal common law, standing alone, could preempt the Climate Act. Even if the federal interests 'incompatible with the application of state law' that preempted the City's nuisance claims in *City of New York* do not, by themselves, justify preemption in this case, the Climate Act would in any event be preempted by the Clean Air Act[.]"). That is, if a court determines there should be a uniform rule of decision for matters addressed by a state statute—even if the state statute is not preempted by the Constitution or by federal common law or by federal statute using well-established statutory preemption tests—the court can use the federal statute to do the job through this new presumption in favor of preemption.

Finally, *City of New York* does not require that analysis. While the Second Circuit did not conduct a "traditional preemption analysis," 993 F.3d at 98, neither did it purport to do away

with that traditional analysis. *City of New York* is best understood as a narrow application of federal common law displacement of state common law tort claims. *See* 993 F.3d at 89 (framing issue as whether "[t]he City's State-Law Tort Claims Are Displaced by Federal Common Law"); Vt. SJ Reply at 7 (ECF No. 128) (demonstrating why *City of New York* did not change statutory preemption analysis). *James*' broader reading ignores settled Supreme Court preemption jurisprudence. The Court should resolve Plaintiffs' Clean Air Act preemption claims using traditional statutory preemption principles. *See* Vt. MTD at 35-42 (ECF No. 76-1); Vt. SJ Mem. at 15-21 (ECF No. 110-1); Vt. SJ Reply at 7-10 (ECF No. 128).

**2.** *James* also runs afoul of common-law preemption precedent because it relieves Plaintiffs of their burden to show an actual conflict between state and federal law. Again, what matters for preemption purposes—even in the context of federal common law preemption—is whether there is an *actual* conflict between state and federal law. *See Hencely v. Flour Corp*., 146 S. Ct. 1086, 1094-96 (2026) ("[T]he identification of a uniquely federal interest 'does not, however, end the inquiry.' . . . [T]his Court's precedents require 'a significant conflict . . . between an identifiable federal policy or interest and the operation of state law.'" (quoting *Boyle*, 487 U.S. at 597)); *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 129 (2d Cir. 1999) ("[T]he Supreme Court has specifically held that 'generalized pleas for uniformity' do not sufficiently allege an actual conflict between state law and a federal interest." (quoting *United States v. Kimbell Foods*, 440 U.S. 715, 730 (1979)).

The *James* decision violates that command. The court reasoned that, under *City of New York,* the conflict analysis turned on whether a "substantial damages award . . . would effectively regulate [fossil fuel p]roducers' behavior," *James*, slip op. at 44 (quoting *City of New York*, 993 F.3d at 92), but then expressly declined to require Plaintiffs to "establish the Climate Act's

supposed regulatory effects" before finding the Act preempted, *id*. at 46; *see also id*. ("The Court need not establish the Climate Act's potential regulatory effect as a matter of fact in order to proceed with its preemption analysis."). Instead, the court simply assumed such effects because the statute—like the tort claims at issue in *City of New York*—imposed a monetary assessment on fossil fuel companies. *Id*. at 45.

The Supreme Court has made clear, however, that not all monetary assessments are created equal. While the Court has observed that tort damage awards *can* run afoul of federal regulatory schemes when they are "exerted to regulate activities," *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959), it has also cautioned that "[l]egislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it." *Huron Portland Cement Co. v. City of Detroit, Mich.*, 362 U.S. 440, 444 (1960). The *James* court did not meaningfully engage with those cases or address the fact that New York's statute—like Vermont's—is not a regulation and was designed in a manner likely to *avoid* the type of regulatory concerns that animated *City of New York*. Vt. SJ Mem. at 12-15 (ECF No. 110-1).

Indeed, *City of New York* does not support *James*' assumption either. In *City of New York*, the Second Circuit was specifically concerned that a "substantial damages award like the one requested by the City"—one that was based on allegations of past, ongoing, *and* future wrongful conduct[3]—would "effectively regulate the [fossil fuel p]roducers' behavior." 993 F.3d at 92. Even assuming the Second Circuit's analysis was consistent with Supreme Court precedent,[4] that

[3] *See* Am. Compl. ¶¶ 129-31 (ECF Doc. 80), *City of New York v. Chevron*, No. 1:18-cv-00182-JFK (S.D.N.Y. Mar. 16, 2018); *see also City of New York*, 993 F.3d at 92 n.5 (noting that City also sought injunctive relief if defendants failed to pay damages).

[4] The State Defendants reserve their right to take the position on appeal that *City of New York* was wrongly decided, *see*, *e.g.*, Vt. MTD at 34, n.25 (ECF No. 76-1), but that issue is not

is no reason to speculate—before either New York or Vermont issues a single cost recovery demand—that the retroactive compensation imposed by the superfund statutes raises comparable concerns. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) (in facial challenge, courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases").[5]

The *James* court erred by simply assuming—before the law was even implemented, and without any factual support or analysis—that New York's Act will conflict with a federal interest in regulating interstate climate emissions. This Court should not make the same mistake. Plaintiffs cannot demonstrate (for purposes of Vermont's motion to dismiss) and have not demonstrated (for purposes of the motions for summary judgment) in this facial challenge that Vermont's law could or *will*, as a matter of law, conflict with the federal interests underlying the federal common law of interstate pollution. The Court should decline to follow the Northern District of New York's analysis.

---

necessary to address here because both *James* and the present case are distinguishable from *City of New York*.

[5] It would be even more inappropriate for the Court to speculate about the impacts of Vermont's law, of course, because unlike New York, Vermont has not yet determined the magnitude of the overall cost recovery it will be seeking. *Compare* Vt. Stat. Ann. tit. 10, § 599c *with* N.Y. Env't Conserv. Law § 76-0101(6).

DATED September 10, 2026

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

By: _/s/ Jonathan T. Rose_
JONATHAN T. ROSE
*Solicitor General*
LAURA B. MURPHY
*Director, Environmental Protection Unit*
HANNAH W. YINDRA
SAMUEL B. STRATTON
*Assistant Attorneys General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
jonathan.rose@vermont.gov
laura.murphy@vermont.gov
hannah.yindra@vermont.gov
sam.stratton@vermont.gov